**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mark Henry VINCENT, Defendant–Appellant.**

No. 93–1910.

United States Court of Appeals,
Sixth Circuit.

Argued March 11, 1994.

Decided March 31, 1994.

Brian K. Delaney (argued and briefed), Office of the U.S. Atty., Grand Rapids, MI, for plaintiff-appellee.

Nancy L. Dilley (argued and briefed), Dilley & Dilley, Grand Rapids, MI, for defendant-appellant.

Before: KENNEDY and MILBURN, Circuit Judges; and LIVELY, Senior Circuit Judge.

MILBURN, Circuit Judge.

Defendant Mark Henry Vincent appeals his conviction and sentence for unlawful possession with intent to distribute marijuana and two firearm offenses. On appeal, the issues are (1) whether the evidence is sufficient to support defendant's conviction for

distribution and possession with intent to distribute marijuana, (2) whether the evidence is sufficient to support defendant's conviction for unlawful use and carrying of a firearm during and in relation to a drug trafficking offense, (3) whether the evidence is sufficient to support defendant's conviction for possession of a firearm by an unlawful user of a controlled substance, and (4) whether the district court erred in applying the United States Sentencing Guidelines. For the reasons that follow, we affirm defendant's convictions, vacate the sentences imposed, and remand for resentencing.

## I.

### A.

On November 20, 1991, a warrant was issued for the search of defendant's home in Kalamazoo, Michigan. The search warrant, based upon information from a purchase of approximately one-quarter ounce of marijuana from defendant's home earlier in the day by a confidential informant, authorized a "no knock" entry because it was believed that guns were located in defendant's home. Later that day, officials of the Kalamazoo, Michigan, Enforcement Team executed the search warrant. Upon exiting their vehicle and approaching defendant's house, the enforcement team observed defendant move down his driveway brandishing a gun. The team illuminated defendant with flash lights and ordered him to drop his weapon. Defendant complied. The team then apprehended defendant and recovered his gun, which was identified as a fully loaded .45 caliber semi-automatic pistol. Thereafter, the team entered defendant's house pursuant to the search warrant. In the course of the search, officials uncovered numerous firearms, drugs, and drug paraphernalia.

### B.

A three-count indictment was subsequently returned against defendant. Count 1 charged defendant with knowingly, willfully and unlawfully distributing and possessing with the intent to distribute a quantity of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). Count 2 charged defendant with knowingly, intentionally and unlawfully using and carrying firearms during and in relation to a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1) and 924(c)(2) and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). Count 3 charged defendant with knowingly receiving and possessing in and affecting interstate commerce a fully loaded Colt Mark 45, a .45 caliber semi-automatic pistol, while being an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3) and 18 U.S.C. § 2.

A jury convicted defendant on all three counts. Defendant was sentenced to 30 months' imprisonment on count 1 and 30 months' imprisonment on count 3 which was to run concurrently with count 1. Additionally, defendant was sentenced to 60 months' imprisonment on count 2, which was to run consecutively to the terms of imprisonment imposed on counts 1 and 3, and fined $5,000. This timely appeal followed.

## II.

### A.

Defendant argues that the evidence admitted at trial does not support his conviction for distributing and possessing with the intent to distribute marijuana charged in count 1 of the indictment. In support of his position, defendant states that the only drug transaction relied upon by the government was the sale by defendant to the government informant on November 20, 1991. He argues that the sale to the informant is not sufficient to establish that he possessed the marijuana with the intent to distribute as opposed to possessing the drug for personal use.

■ "A defendant claiming 'insufficiency of the evidence bears a very heavy burden.'" *United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir.) (quoting *United States v. Soto,* 716 F.2d 989, 991 (2d Cir.1983)), *cert. denied,* 476 U.S. 1123, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986). Where, as here, the defendant has moved for a judgment of acquittal both at the close of the government's case and at the close of all the evidence, our standard of review concerning a sufficiency of the evi-

dence issue is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *Vannerson*, 786 F.2d at 225.

■ The government submitted ample evidence for a rational fact finder to have found the essential elements of the drug possession offense charged in count 1 of the indictment. Count 1 charged defendant with both the knowing or intentional distribution of marijuana and the knowing or intentional possession with intent to distribute marijuana. In order to establish the knowing or intentional distribution of a controlled substance, the government needed only to show that defendant knowingly or intentionally delivered a controlled substance. 21 U.S.C. § 802(11). It was irrelevant for the government to also show that defendant was paid for the delivery. *United States v. Coady*, 809 F.2d 119, 124 (1st Cir.1987). Moreover, the government could satisfy its burden of establishing that defendant knowingly or intentionally possessed marijuana with intent to distribute it through the inferences drawn from evidence such as the quantity of the marijuana involved, *United States v. Faymore*, 736 F.2d 328, 333 (6th Cir.), *cert. denied*, 469 U.S. 868, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984), the estimated street value of the marijuana, *id.*, the purity of the marijuana, *United States v. Blake*, 484 F.2d 50, 58 (8th Cir.1973), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974), and other evidence which would support the inference that the marijuana was not intended to be used for personal use. *United States v. Pennyman*, 889 F.2d 104, 108 (6th Cir.1989).

■ In satisfying its burden of establishing that defendant knowingly or intentionally distributed marijuana, the government first presented a witness employed by the Bureau of Alcohol, Tobacco & Firearms. This witness testified that during a noncustodial interview defendant admitted to her that he had sold marijuana to a person on the day the search warrant was executed and that in the past he had shared marijuana with friends. The government also called a witness who, with the assistance of the prosecutor, read into evidence a sworn statement made by defendant in a state proceeding against defendant's wife. In that sworn statement, defendant stated that he had given marijuana to a person who later was identified as a government informant. Testimony was also elicited from a law enforcement official of the Kalamazoo, Michigan, Enforcement Team who accompanied the government informant to defendant's home to purchase marijuana on November 20, 1991. The witness stated that he gave the informant marked money and instructed the informant to purchase marijuana from defendant. The witness then testified that he recovered from the informant a bag of marijuana and a portion of the marked funds not used in the purchase after the informant left the defendant's home.

In satisfying its burden of establishing that defendant knowingly or intentionally possessed the marijuana with the intent to distribute it, the government introduced, through the testimony of several witnesses, evidence which inferred that the marijuana possessed by defendant was not for his personal use. For instance, the government introduced at trial the marked money used by the government informant to purchase marijuana from defendant on November 20, 1991. Moreover, government witnesses testified that in the search of defendant's house they seized over 15 pounds of high-quality marijuana, which had a street value of over $35,000.00, hand scales suitable for weighing and measuring quantities of marijuana, growing lamps, and a book describing how to grow marijuana. The government also introduced defendant's own admission that he gave the government informant a bag of marijuana and that he used to share marijuana with friends.

Apart from arguing that the evidence was insufficient to support his conviction under count 1, defendant also raises several other

arguments in support of his position that his conviction should be reversed. Defendant argues for the first time on appeal that the government introduced irrelevant and highly prejudicial evidence against him. Specifically, defendant objects to the evidence of the government which revealed that defendant used cocaine, methamphetamine, and hashish as well as the introduction of the grow lights, styrofoam cups, and the marijuana grower's guide. Defendant contends that none of this information was relevant to the crimes charged.

■ Because defendant raises this argument for the first time on appeal, we review solely for plain error. Fed.R.Crim.P. 52(b). Our review under that standard is comprised of four distinct inquiries. First, we are to consider whether an error occurred in the district court. *United States v. Olano*, —— U.S. ——, ——, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993). Absent any error, our inquiry is at an end. However, if an error occurred, we then consider if the error was plain. *Id.* If it is, then we proceed to inquire whether the plain error affects substantial rights. *Id.* at ——, 113 S.Ct. at 1777–78. Finally, even if all three factors exist, we must then consider whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity, or public reputation of the proceedings. *Id.* at ——, 113 S.Ct. at 1779.

■ Based on our review, we conclude that no error occurred in the district court. In an effort to establish that defendant was an unlawful user of a controlled substance, an element contained in count 3 of the indictment, the government introduced evidence indicating the defendant's usage of a variety of controlled substances. This evidence included a cocaine user's kit, traces of methamphetamine and cocaine found on a cutting tray and a straw, and various drug paraphernalia, all of which were seized during the search of defendant's home. Additionally, in order to establish that defendant possessed marijuana with the intent to distribute, an element contained in count 1 of the indictment, the government introduced the grow lights, styrofoam cups used in the growing process, and the manual on growing marijuana. Consequently, contrary to defendant's suggestion, each piece of evidence to which he now objects was relevant in establishing an element charged in the indictment. Furthermore, the probative value of such evidence was not substantially outweighed by the danger of any unfair prejudice to defendant. Federal Rule of Evidence 403. Because we find no error, this ends our plain error inquiry.

Defendant also argues that "the information upon which the warrant was obtained did not provide sufficient reliability to support the warrant with probable cause." Brief of Appellant 15. Thus, he argues that the search was violative of his Fourth Amendment right to be free from unreasonable searches and seizures. Defendant, however, never raised this argument before the district court. Because, under Federal Rule of Criminal Procedure 12(b)(3), defendant was required to raise suppression issues prior to trial, and because his failure to do so constituted a waiver of this claim, Fed.R.Crim.P. 12(f), we are precluded from considering his claim on appeal. *United States v. Oldfield*, 859 F.2d 392, 396 (6th Cir.1988).

Finally, defendant argues for the first time on appeal that the government's use of an informant to enter his home and purchase marijuana amounts to entrapment. We decline to address this argument because we will not entertain issues raised for the first time on appeal, especially where, as here, consideration of the issue requires a factual inquiry beyond that contained in the record on appeal. *United States v. Pickett*, 941 F.2d 411, 415 (6th Cir.1991).

**B.**

■ Count 2 charged that defendant knowingly, intentionally and unlawfully used and carried firearms during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Defendant argues that because there was no "nexus" between the marijuana and any firearm, the evidence was insufficient to support his conviction under this count. Defendant insists that he is a

gun collector and that he used some of the guns seized during the search of his house for target practice and rodent extermination. He argues that at the time the "controlled buy" took place with the government informant, none of the firearms he possessed in his home were in close proximity. Moreover, he argues that "there was no evidence that [he] ever relied on, referenced, or intended the presence of firearms in any way to protect his drugs." Appellant's Reply Brief 6.

We have previously stated that the terms "used" and "carried" as set forth in 18 U.S.C. § 924(c) should not be narrowly interpreted to mean only that the defendant actually physically possessed a weapon or that the defendant actually brandished the weapon in the commission of the drug offense. *United States v. Acosta–Cazares*, 878 F.2d 945, 952 (6th Cir.), *cert. denied*, 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989). Rather, we have construed those terms broadly "to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions." *Id.* Moreover, where, as here, firearms are found on premises under the control of a drug offender, we have held "that if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used 'during and in relation to' a drug trafficking crime." *United States v. Henry*, 878 F.2d 937, 944 (6th Cir.1989) (describing "fortress analogy" theory). To state it another way, "if the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred, then there is a violation of [18 U.S.C. § 924(c) ]." *United States v. Morrow*, 977 F.2d 222, 231 (6th Cir.1992) (en banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993). As earlier stated, our standard of review for claims

of insufficient evidence is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Evans*, 883 F.2d at 501 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

Based on the facts in this case, we conclude that the government presented ample evidence to support a conviction under count 2. Upon searching defendant's home, law enforcement officials found, among other things, a loaded, semi-automatic, riot type shotgun placed near a doorway, several loaded and unloaded firearms located next to 56 bags of high-quality marijuana in an unlocked safe, and two rifles next to spent cartridges and a box of marijuana in an upstairs bedroom. A rational jury no doubt could conclude that defendant had ready access to these firearms in order to protect the drugs, in order to enforce distribution, or even in order to lend courage. This is especially true in this case because defendant was armed with a loaded .45 caliber semi-automatic handgun at the time the law enforcement officials arrived to execute the warrant. Moreover, the proximity of the firearms to the marijuana belies defendant's suggestion that he intended to use his guns solely for target practice and pest control. *See United States v. Blankenship*, 954 F.2d 1224, 1229 (6th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 288, 121 L.Ed.2d 213 (1992).

In addition to arguing that the evidence was insufficient to support his conviction under count 2, defendant also contends for the first time on appeal that because the indictment did not specify which firearm was used and carried during and in relation to his drug offense, he was denied a unanimous verdict unless the record shows that all the guns were used and carried during and in relation to his drug offense. In support of this argument defendant relies on *United States v. Theodoropoulos*, 866 F.2d 587 (3d Cir.1989), wherein the Third Circuit held that where a jury fails to identify which firearm was used during and in relation to a drug trafficking offense, the conviction can only be

upheld if it can be said that all of the guns could have been deemed to have been used in relation to the drug trafficking offense. Relying on that language, defendant argues that it cannot be said that all of the guns recovered in the search could have been deemed to have been used in relation to his drug trafficking offense, given the fact that some of the firearms were located in remote locations at the time of the drug transaction with the government informant. Because of defendant's failure to raise this issue in the district court, our review is limited to the plain error standard. F.R.Crim.P. 52(b).

We conclude that no error occurred in the district court. We rejected a similar argument to that set forth by defendant in *United States v. Robison,* 904 F.2d 365 (6th Cir.), *cert. denied,* 498 U.S. 946, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990). In that case, the indictment had specified the use of a particular gun, but the district court had instructed the jury that it need not find that the gun named in the indictment was in fact the gun used during and in relation to the drug trafficking offense. We agreed that the district court's instruction was appropriate, concluding that the specific type of firearm used is not an essential element to convict a defendant under 18 U.S.C. § 924(c). *Id.* at 369. The same can be said in this case. The indictment does not specify which firearm was used and carried during and in relation to defendant's drug trafficking offense. Instead, it simply states that defendant used and carried "firearms." J.A. 14. Like the district court in *Robison,* the district court in this case did not require the jury to identify which firearm was used, but rather, as we approved in *Robison,* instructed the jury that it need only find that defendant used a firearm. Accordingly, our plain error inquiry is at an end.

## C.

■ Count 3 charged defendant with knowingly receiving and possessing in and affecting interstate commerce a fully loaded Colt Mark 45, a .45 caliber semi-automatic pistol, while being an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3). Defendant argues that the evidence does not support the charge in this count because in establishing that the pistol was manufactured in a state other than Michigan, and thus affecting interstate commerce, the expert witness called by the government relied on hearsay evidence. Although defendant acknowledges that an expert may at times rely upon information and evidence which is inadmissible, he argues that in this case it was impermissible for the expert to testify as to what others told him about the pistol because the effect "was to cause the admission of hearsay as substantive evidence." Brief of Appellant 30.

■ "[P]roof that the firearm was manufactured outside the state in which the possession occurred is sufficient to support a finding that the possession was in or affected interstate commerce." *United States v. Jones,* 533 F.2d 1387, 1393 (6th Cir.1976), *cert. denied,* 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059 (1977). The government may satisfy its burden of establishing that the firearm was manufactured outside the state in which the possession occurred by presenting the testimony of a witness who, through personal experience, knows the place of manufacture of the firearm and by making the witness available for cross-examination. *United States v. Simmons,* 773 F.2d 1455, 1460–61 (4th Cir.1985). Such testimony does not constitute hearsay. *Id.* at 1461.

The government satisfied its burden of establishing that the Colt Mark 45 was manufactured outside the state of Michigan through the testimony of Carlo J. Rosati, a firearms and tool marks examiner employed by the Bureau of Alcohol, Tobacco & Firearms. Rosati testified that the pistol was manufactured by the Colt Firearms Company in Hartford, Connecticut. When asked how he was able to determine where the pistol was manufactured, Rosati stated that he was personally aware that Colt firearms are manufactured in Connecticut. Moreover, while Rosati was on cross-examination, the district court asked him whether Colt manufactures any firearms in the State of Michigan. Rosati responded that it does not. The district court then asked Rosati: "Have they ever to the best of your knowledge?" J.A. 240. Rosati again answered in the negative.

Thus, contrary to defendant's suggestion, Rosati did not rely exclusively on hearsay evidence in testifying as to the origin of the Colt firearm.

■ In addition to arguing that the evidence was insufficient to support his conviction under count 3, defendant also raises two additional arguments. First, he argues that his convictions under count 2 and count 3 are unconstitutional. Defendant argues that the Double Jeopardy Clause of the Fifth Amendment prohibits the government from relying on the same conduct of a defendant to support two distinct charges. According to defendant, the government in this case relied on the same conduct to support the charges in count 2 and count 3, and this conduct arose from the same act or transaction. As a consequence, defendant argues that his convictions must be reversed.

The "same conduct" rule relied on by defendant was set forth in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). *Grady*, however, was recently overruled in *United States v. Dixon*, — U.S. —, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). In *Dixon*, the Supreme Court reaffirmed its ruling in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), which set forth the relevant inquiry under the Double Jeopardy Clause for multiple punishments for the same offense:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.

*Id.* at 304, 52 S.Ct. at 182.

Given the elements of these two offenses, it is apparent that each offense requires proof of a fact which the other does not. For instance, to prove the charge in count 3 the government must show that defendant is an unlawful user of a controlled substance. Such a requirement is unnecessary to convict defendant under count 2. Count 3 also requires that the firearm at issue be shipped or transported in interstate commerce. Again, no such requirement is necessary under count 2. Consequently, because the proof of count 2 requires facts which are irrelevant to prove the elements in count 3, and vice-versa, we conclude that there is no constitutional violation under the Double Jeopardy Clause.

■ Defendant also argues that both his appointed trial counsel and his retained counsel who represented him in earlier proceedings rendered ineffective assistance of counsel. Defendant initially raised this argument in his pro se motion for a new trial filed pursuant to Rule 33 of the Federal Rules of Criminal Procedure. That rule states in part:

> The court on motion of a defendant may grant a new trial to him if required in the interest of justice. . . . A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period.

Fed.R.Crim.P. 33. "The seven-day period for filing a motion for a new trial, based on any ground other than newly discovered evidence, is a jurisdictional limit on the district court's power to act." *United States v. Miller*, 869 F.2d 1418, 1420 (10th Cir.1989).

We are without jurisdiction to consider defendant's claim. The verdict finding defendant guilty was rendered on March 2, 1993. Defendant filed his motion for a new trial on April 29, 1993, well over the seven-day period set forth in Fed.R.Crim.P. 33. Defendant does not claim that the motion for a new trial was based upon "newly discovered evidence." *See United States v. Seago*, 930 F.2d 482, 489 (6th Cir.1991) (concluding that evidence of ineffective assistance of counsel is not newly discovered evidence for purposes of a motion for a new trial where the facts supporting the claim were within the defendant's knowledge at the time of trial). Accordingly, we will not consider defendant's claim of ineffective assistance of counsel. "The more preferable route for raising an ineffective assistance of counsel

claim is in a post-conviction proceeding under 28 U.S.C. § 2255, which allows the parties to develop an adequate record on the issue." *United States v. Carr,* 5 F.3d 986, 993 (6th Cir.1993).

### D.

Defendant argues that the district court erred in its application of the United States Sentencing Guidelines ("Guidelines") on a number of grounds.

### 1. *Weight of the Controlled Substance*

 Defendant argues that the district court erred in calculating the weight of the marijuana under U.S.S.G. § 2D1.1 because it failed to exclude the weight of the marijuana stalks and seeds. Defendant argues that the error committed by the district court caused the offense level to be two levels higher than it should have been.

The relevant Guidelines provision relied upon by defendant provides that "[u]nless otherwise specified, the weight of a controlled substance set forth in [U.S.S.G. § 2D1.1] refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c). At the time of sentencing, a commentary note to U.S.S.G. § 2D1.1 provided that the terms "mixture or substance" had the same meaning as in 21 U.S.C. § 841. *See* U.S.S.G. § 2D1.1, comment. (n. 1). The commentary note was subsequently amended, effective November 1, 1993, and now provides:

> "Mixture or substance" as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided. Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance.

U.S.S.G. § 2D1.1, comment. (n. 1). As noted by the Sentencing Commission,

> [t]his amendment addresses an inter-circuit conflict regarding the meaning of the term "mixture or substance," as used in § 2D1.1 by expressly providing that this term does not include portions of a drug mixture that have to be separated from the controlled substance before the controlled substance can be used.

U.S.S.G. amend. 484.

Even were we to conclude that the amendment to U.S.S.G. § 2D1.1 applies retroactively, *see United States v. Dullen,* 15 F.3d 68 (6th Cir.1994), we conclude that defendant's argument is unavailing. Defendant's argument in essence is that the stalks and seeds contained in the seized marijuana do not constitute a "mixture or substance" as used in U.S.S.G. § 2D1.1. Defendant's argument, however, overlooks the fact that the testimony at trial revealed that the stalks and seeds of a marijuana plant contain a detectable amount of the controlled substance. Thus, in contrast to the examples cited in the commentary note, the stalks and seeds need not be separated before the controlled substance can be used. Accordingly, the stalks and seeds are to be used in calculating the weight of a controlled substance.

### 2. *Acceptance of Responsibility*

 The defendant next argues that he should receive credit for acceptance of responsibility under U.S.S.G. § 3E1.1. At trial, the district court rejected this argument stating:

> [B]asically the defendant persists in a claim of non-responsibility here and has several explanations for what happened at his house that particular night.

> Unfortunately for him and what is binding upon the defendant and upon government and upon the Court at this time is the jury's verdict. And I cannot go behind that verdict to make new findings of fact regarding the guilt or innocence of the defendant. I am bound by the verdict.

J.A. 55. On appeal, defendant argues that he "has always believed that he is not guilty under Counts 1 or 2 ... [and that] [h]e accepted the responsibility to the extent the truth would bear." Brief of Appellant 39.

Section 3E1.1 of the Guidelines provides that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." Whether the defendant clearly demonstrates acceptance of responsibility is a finding of fact. *United States v. Williams*, 940 F.2d 176, 181 (6th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 666, 116 L.Ed.2d 757 (1991). Therefore, we review the district court's determination only for clear error.

We conclude that the district court did not commit clear error by failing to decrease defendant's offense level by two levels pursuant to U.S.S.G. § 3E1.1. As explained by a commentary note, a decrease pursuant to this provision

> is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1 comment. (n. 2). The facts in this case do not include the rare situation where a decrease is appropriate despite the fact that the defendant exercised his constitutional right to trial. In fact, defendant continues to believe that he is not guilty under two counts. This contradicts his position that he has accepted responsibility for the offenses charged. Accordingly, we will not disturb the district court's determination.

### 3. *Aberrant Behavior*

Defendant next argues, as he unsuccessfully did before the district court, that his drug transaction with the government informant "is of the type of crime the Sentencing Commission intended to be included in aberrant behavior such that the sentencing court could downwardly depart from the Guidelines in the sentence imposed." Brief of Appellant 43. In support of his argument, defendant states that testimony at trial revealed that he was not a drug dealer, that he possessed the marijuana seized for personal use, and that he gave the informant a small quantity of marijuana after refusing to sell him a large quantity.

A district court's refusal to depart downwardly is not reviewable on appeal when the district court properly computes the Guidelines range, imposes a sentence that is not illegal or did not result from an incorrect application of the Guidelines range, and is not unaware that it had discretion to depart from the Guidelines range. *United States v. Davis*, 919 F.2d 1181, 1187 (6th Cir.1990). In this case, the district court neither erred in computing the Guidelines range nor erred in imposing the sentence. Furthermore, the district court was aware of its discretion to depart downward. Accordingly, this argument is not cognizable in this appeal.

### 4. *Fine*

Defendant argues that the district court erred in imposing a fine of $5,000 in addition to the terms of imprisonment. Before the district court, defendant argued that it would be inappropriate for the court to impose a $5,000 fine, noting that nothing in the presentence report indicated that he had an ability to satisfy such an amount. Despite defendant's objections, the district court opted to fine defendant, stating as follows:

> I'll be glad to listen to you [defendant's counsel] on that [the imposition of the fine] except there is one thing in the presentence report that hit my eyes right away; and that is, I heard testimony that this man [defendant] was in business, both snow-plowing business and a lawn-care business which he sold to his wife for $1. Now if he had any kind of—any piece of equipment supporting that business, that

business is certainly worth more than $1. I think he's playing a game. J.A. 58–59. After defendant's counsel offered an explanation, the district court concluded

> [Defendant] had a business. He sold it for $1. And that business is apparently still in existence or resold. But the fine for $5,000 is going to stand.

*Id.* The fine imposed by the district court is $1,000 below the minimum amount authorized under U.S.S.G. § 5E1.2(c)(3). On appeal, defendant argues that the district court erred in failing to waive the fine.

The Guidelines require courts to impose fines "in all cases, except where the defendant establishes that he is unable to pay *and* is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a) (emphasis added). In ascertaining the amount of the fine, the court is to consider, among other things, "any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources," U.S.S.G. § 5E1.2(d)(2), and "the burden that the fine places on the defendant and his dependents relative to alternative punishments," U.S.S.G. § 5E1.2(d)(3). If the defendant establishes that payment of a lump sum would have an unduly severe impact on him or his dependents, the court should establish an installment plan. U.S.S.G. § 5E1.2(g). Moreover, in cases where defendant "is not able and, even with use of a reasonable installment schedule, is not likely to pay all or part of the fine," or if "imposition of a fine would unduly burden the defendant's dependents," the court may impose a lesser fine or waive the fine requirement. U.S.S.G. § 5E1.2(f).

We conclude that the district court did not err in failing to waive the fine. Defendant bears the burden "of showing that he was unable to pay his fines imposed by the District Court." *United States v. Bradley*, 922 F.2d 1290, 1298 (6th Cir.1991), *overruled on other grounds, United States v. McGlocklin*, 8 F.3d 1037, 1046–47 (6th Cir.1993) (en banc). In this case, defendant relies on the fact that the presentence report concluded that defendant did not have the ability to pay a fine. Presentence Investigation Report 12. How-

ever, the presentence report makes no conclusion regarding defendant's inability to pay in the future, and defendant presents no evidence that he is not likely to become able to pay the fine. Therefore, "when there [is] no proof by defendant on his likelihood to regain his earning capacity, the district court had the duty to impose some fine." *United States v. Blanchard*, 9 F.3d 22, 26 (6th Cir. 1993). Accordingly, we will not disturb the fine imposed.

### 5. *Double Counting*

Section 2K2.4(a) of the Guidelines provides that where, as here, a defendant is convicted for unlawful use and carrying of a firearm during and in relation to a drug trafficking crime, the term of imprisonment is that required by statute. A background note to U.S.S.G. § 2K2.4 provides that

> [t]o avoid double counting, when a sentence [for unlawful use or carrying of a firearm during and in relation to a drug trafficking offense] ... is imposed in conjunction with a sentence for an *underlying offense*, any specific offense characteristic for firearm discharge, use, or possession is not applied in respect to such underlying offense.

U.S.S.G. § 2K2.4, comment. (backg'd) (emphasis added). Failing to view defendant's conviction under count 3 for possession of a firearm by an unlawful user of a controlled substance as an underlying offense, the district court determined that in calculating defendant's sentence under the count 3 conviction, it could increase defendant's base offense level by the specific offense characteristics under U.S.S.G. § 2K2.1(b)(1) and U.S.S.G. § 2K2.1(b)(5) without engaging in impermissible double counting.

On appeal, defendant argues that the district court erred in failing to conclude that defendant's conviction under count 3 was an underlying offense to the unlawful use or carrying of a firearm during and in relation to a drug trafficking offense and as a consequence that increasing his base offense level by the specific offense characteristics did not constitute double counting. On the other hand, the government believes that the plain

language of the Guidelines supports the district court's conclusion that defendant's conviction under count 3 was not an underlying offense. Accordingly, the government argues that the district court did not engage in double counting. Because the determination as to whether the district court in this case erred in applying specific characteristics with respect to defendant's sentence for the conviction under count 3 is a question of law, we review the district court's judgment de novo. *United States v. Smith,* 981 F.2d 887, 893 (6th Cir.1992).

We conclude that the district court erred in failing to conclude that defendant's conviction for possession of a firearm by an unlawful user of a controlled substance was an underlying offense to defendant's unlawful use or carrying of a firearm during and in relation to a drug trafficking offense. The Guidelines do not define the term "underlying offense." However, both the background note and an application note to U.S.S.G. § 2K2.4 provide no restrictions on what types of offenses constitute "underlying offenses." Rather, those notes simply provide that a sentencing court may not apply specific offense characteristics with respect "to *such* underlying offense," U.S.S.G. § 2K2.4, comment. (backg'd) (emphasis added), or with respect "to the guideline for *the* underlying offense," U.S.S.G. § 2K2.4, comment. (n. 2) (emphasis added). Given this language, we are unwilling to read "underlying offense" narrowly. Accordingly, because we conclude that defendant's count 3 conviction was an underlying offense to defendant's unlawful use or carrying of a firearm during and in relation to a drug trafficking offense, section 2K2.4 requires that in order to avoid double counting, the district court is prohibited from applying any specific offense characteristic for firearm discharge, use, or possession with respect to defendant's sentence under count 3.[1]

Our conclusion is not inconsistent with the First Circuit's decision in *United States v. Sanders,* 982 F.2d 4 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). In that case, a defendant was convicted of (1) being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1), and (2) using or carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Applying the armed career criminal provision set forth in U.S.S.G. § 4B1.4, the district court increased defendant's base offense level for his conviction of being a felon in possession of firearms. On appeal, defendant argued, among other things, that increasing his base offense level constituted double counting under U.S.S.G. § 2K2.4. The First Circuit disagreed, holding that even if it were to conclude that the conviction for being a felon in possession of firearms was an underlying offense to the crime of using or carrying a firearm during and in relation to a drug trafficking offense, there was no double counting under U.S.S.G. § 2K2.4 because defendant's base offense level was not increased by a specific offense characteristic. *Id.* at 7. In contrast, the district court in this case increased defendant's base offense level by specific offense characteristics.[2]

### III.

For the reasons stated, defendant's convictions are AFFIRMED. However, in light of the district court's errors in sentencing, we VACATE the sentences imposed and REMAND for resentencing consistent with the views expressed in this opinion.

---

**1.** Additionally, in this case the jury could have found that the same weapon or weapons used and carried during and in relation to the drug trafficking offense included the one or ones possessed by defendant as an unlawful user of narcotics. If that were the case, the Guidelines would otherwise punish users more severely than non-users who are in the business of selling drugs only for money. We do not believe the Guidelines intend such a result.

**2.** In light of our conclusion, we need not address defendant's arguments that the district court erred in failing to decrease his base offense level under U.S.S.G. § 2K2.1(b)(2) and that the district court erred in increasing his base offense level three levels under U.S.S.G. § 2K2.1(b)(1)(C) because the indictment only specified one firearm.