**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kelli BASEY, Defendant–Appellant.**

No. 00–1852.

United States Court of Appeals,
Sixth Circuit.

Dec. 21, 2001.

355 of the district court.

Before CLAY and GILMAN, Circuit Judges; and EDGAR, District Judge.*

OPINION

GILMAN, Circuit Judge.

Kelli Basey appeals the sentence that she received after pleading guilty to one

count of distributing cocaine base, otherwise known as crack cocaine. She first contends that the district court erred in declining to reduce her offense level pursuant to United States Sentencing Guidelines § 3B1.2(b), which provides for a two-point reduction where a defendant was a "minor participant in any criminal activity." In addition, Basey argues that the district court erred in concluding that she failed to provide the government with sufficient information regarding her criminal activity so as to receive an additional two-point reduction pursuant to United States Sentencing Guidelines § 2D1.1(b)(6) (the "safety valve" guideline). For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

The present case arises from two crack cocaine sales arranged by Basey in 1998. These sales occurred after David Jackson, a friend of Basey for several years, requested Basey's assistance in purchasing crack cocaine. Jackson was then serving as an informant for the Tri–County Metro Narcotics Task Force (TCM), which was investigating drug-related activities in Lansing, Michigan.

The first crack cocaine sale occurred on October 9, 1998. On that date, Jackson informed the TCM that he had the opportunity to purchase two ounces of crack cocaine from Corey Goss at Basey's apartment. Officers with the TCM gave Jackson $1,800 to purchase the drugs. Jackson then met Basey at her apartment, at which time she informed him that Goss was late and would be arriving shortly. Approximately 45 minutes later, Goss called Basey to request that she meet him at a nearby

* The Honorable R. Allan Edgar, District Judge of the United States District Court for the Eastern District of Tennessee, sitting by designation.

residence to complete the sale. Jackson remained in the apartment while Basey left to meet Goss. When Basey returned shortly thereafter with two ounces of crack cocaine, she explained that Goss preferred to make the sale through her because Jackson had been "out of the game" for a while. Jackson accepted the crack cocaine, paying $1,500 for the two ounces. Basey kept $750 for herself and gave the remainder of the proceeds to Goss.

Jackson arranged to purchase another two ounces of crack cocaine through Basey on December 4, 1998. Prior to the sale, Jackson again met with officers from the TCM, who provided him with $2,200 to purchase the drugs. He then went to Basey's apartment to complete the sale. When he arrived at Basey's apartment, Jackson was told by Basey that they would be purchasing the crack cocaine at a nearby K–Mart store from a supplier named Tony Benson. Jackson and Basey then went to the parking lot of the store, with Benson arriving a short time later. Basey left Jackson's vehicle and walked over to Benson's vehicle. She returned with two ounces of crack cocaine. On this occasion, Jackson paid $2,000 for the drugs. Basey again kept one-half of the proceeds.

**B. Procedural background**

A federal grand jury in the Western District of Michigan indicted Basey on two counts of distributing crack cocaine, in violation of 21 U.S.C. § 841(a). She was charged in Count One with distributing five or more grams of the drug on or about October 9, 1998. Count Two charged Basey with distributing the same amount on or about December 4, 1998.

Basey subsequently entered into a plea agreement with the government. The plea agreement called for Basey to plead guilty to Count One of the indictment. In re-

turn, the government agreed to dismiss Count Two.

The plea agreement also included certain stipulations regarding Basey's sentence. First, the government agreed that it would not object if the presentence investigation report (PSR) recommended, pursuant to United States Sentencing Guidelines § 3B1.2(b), that Basey receive a two-point reduction for playing a minor role in the crack cocaine sale charged in Count One. Second, the government stipulated that Basey would be eligible for an additional two-point reduction under United States Sentencing Guideline 2D1.1(b)(6) if, before the sentencing hearing, she provided the government with "all information and evidence she has concerning the offense charged in Count One" of the indictment.

Basey entered a plea of guilty to Count One on March 22, 2000. The PSR was issued shortly thereafter. It recommended that Basey not receive a two-point reduction as a minor participant under § 3B1.2(b) because she had refused to identify her crack cocaine supplier, so that there was "no one to compare [her] culpability with." Basey objected to the PSR, arguing that she was entitled to a two-point reduction under this section of the Guidelines.

The district court conducted a sentencing hearing on July 5, 2000. At the hearing, Basey offered little argument in support of her contention that her offense level should be reduced under § 3B1.2(b). She did contend, however, that her refusal to identify her crack cocaine supplier was the only reason preventing her from receiving a reduction under both § 3B1.2(b) and § 2D1.1(b)(6).

Before addressing Basey's objection, the district court gave her another opportunity to divulge the identity of her crack cocaine supplier so that she could receive a two-

point reduction under the "safety valve" guideline of § 2D1.1(b)(6). She refused to do so. The district court then considered whether Basey was eligible for a two-point reduction as a "minor participant" under § 3B1.2(b). Finding that Basey had played "an indispensable and important role in the commission of the offense," the district court declined to grant such a reduction.

Basey now appeals. She contends that the district court erred in failing to reduce her sentence pursuant to both § 3B1.2(b) and § 2D1.1(b)(6).

## II. ANALYSIS

### A. Standard of review

A district court's interpretation of the sentencing guidelines is reviewed de novo. *United States v. Sanchez,* 928 F.2d 1450, 1458 (6th Cir.1991). This court will not, however, set aside a district court's findings of fact from a sentencing hearing unless the findings are clearly erroneous. *United States v. Moored,* 38 F.3d 1419, 1423 (6th Cir.1994). A factual finding is clearly erroneous where, although there is evidence to support that finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

### B. The district court did not err in declining to reduce Basey's offense level pursuant to United States Sentencing Guidelines § 3B1.2(b)

■ The first issue on appeal concerns Basey's eligibility for a two-point reduction pursuant to United States Sentencing Guidelines § 3B1.2(b). A defendant is eligible for a two-point reduction under this section if she "was a minor participant in

any criminal activity." To receive the reduction, a defendant must prove, by a preponderance of the evidence, that she was "less culpable than most other participants" and "substantially less culpable than the average participant" in the criminal activity at issue. U.S. Sentencing Guidelines Manual § 3B1.2, cmt. n. 3 & background; *United States v. Latouf,* 132 F.3d 320, 332 (6th Cir.1997) ("The Defendant must prove the mitigating factors that justify a reduction [under § 3B1.2(b) ] by a preponderance of the evidence.").

In the present case, Basey challenges the district court's conclusion that she failed to meet this burden. According to Basey, the district court denied her a reduction under § 3B1.2(b) solely because the offense to which she had pled guilty would not have occurred without her participation. She concedes that, as the sole participant charged in her offense of conviction, she was indispensable to that offense. But she contends that the district court should have looked beyond the particular elements of her offense of conviction in determining whether she qualified for a § 3B1.2(b) reduction.

Specifically, Basey maintains that the district court should have examined all of the circumstances surrounding the offense; namely, the "larger" distribution scheme underlying the sale of crack cocaine to Jackson. She characterizes her role in this scheme as "equivalent to that of a courier." As a courier, Basey argues that she was far less culpable than the supplier of the crack cocaine.

Basey correctly identifies the proper scope of § 3B1.2(b). A defendant's eligibility for a reduction under that section is not determined "solely on the basis of elements and acts cited in the count of conviction." U.S. Sentencing Guidelines Manual Ch. 3, Part. B, intro. comment. Instead, a district court applying

§ 3B1.2(b) must also determine whether the defendant was a minor participant in the relevant conduct attributable to that defendant. *Id.; United States v. Fouch,* No. 96–1542, 1997 WL 130081, at *2 (6th Cir. March 19, 1997) (unpublished table decision) ("The law is clear that a district court must consider all relevant conduct in weighing a defendant's role in the offense."). Such conduct includes "all acts ... that occurred during the commission of the offense of conviction [or] in preparation for that offense ...." U.S. Sentencing Guidelines Manual § 1B1.3 (defining relevant conduct).

The district court, however, did not misinterpret the proper scope of § 3B1.2(b) in refusing to reduce Basey's offense level. Rather than focus on the specific elements of the charge to which Basey had pled guilty, the district court considered all of the circumstances relating to the October 9, 1998 crack cocaine sale to Jackson. The district court recognized that Basey had not supplied the crack cocaine, but it nevertheless found that she had played an "important" role in the sale by "meeting a buyer of drugs at her apartment, contacting the supplier of drugs about the sale, picking up the drugs from the supplier and delivering the drugs to the buyer at her apartment." Basey's role in brokering the sale, coupled with her receipt of one-half of the sale's proceeds, adequately supported the district court's conclusion that her conduct was "not less culpable than the average participant in the offense ...." Her equal share of the proceeds, in fact, is more consistent with being a full partner in the offense rather than being a simple courier as Basey contends.

Although the district court further characterized Basey's role in the sale as indispensable, this finding was not based solely upon the fact that she was the only participant charged with distributing crack cocaine to Jackson. Instead, the district court noted that the supplier was unwilling to sell crack cocaine directly to Jackson. It therefore determined "that the distribution would not have occurred but for [Basey's] role in the offense."

The only shortcoming in the district court's application of § 3B1.2(b) was its failure to explicitly analyze Basey's role in the December 4, 1998 crack cocaine sale. Both parties agree that this sale was relevant conduct attributable to Basey. The December sale, therefore, should have been considered in determining whether Basey was entitled to a § 3B1.2(b) reduction. But the omission was harmless, because Basey acknowledges that she played the same role in the December 4, 1998 sale as she had in the October 9, 1998 sale. The district court's finding that she played an important role in the October sale is therefore equally applicable to the December sale.

Basey finally argues that even if the district court used the correct legal standard in judging the relative severity of her conduct, its conclusion that she was not entitled to a downward adjustment was clear error. She maintains that she only reluctantly participated in the crack cocaine sales to Jackson, who she says used their friendship to pressure her into arranging the sales. Furthermore, Basey contends that the government prosecuted her for participating in these sales solely to force her to reveal the sources of her supply. But Basey fails to explain how either her motivation for arranging the crack cocaine sales or the government's motivation in prosecuting her for doing so diminishes her role in the sales.

For all of these reasons, we conclude that the district court did not err in declining to reduce Basey's offense level under § 3B1.2(b).

## C. The district court did not err in declining to reduce Basey's offense level pursuant to United States Sentencing Guidelines § 2D1.1(b)(6)

■ Basey next argues that her offense level should have been reduced pursuant to United States Sentencing Guidelines § 2D1.1(b)(6). This section provides a two-point reduction for a defendant who has a base offense level of 26 or greater and meets the criteria set forth in United States Sentencing Guidelines § 5C1.2, a provision that in turn incorporates the criteria listed in 18 U.S.C. § 3553(f). The purpose of these latter two provisions is to "allow less culpable defendants who fully assist[ ] the Government to avoid the statutory mandatory minimum sentences." *United States v. Rodriguez,* 60 F.3d 193, 196 (5th Cir.1995).

There is no dispute that Basey had a base offense level greater than 26. Basey now contends that she also met the criteria of § 3553(f), and that she therefore should have received a two-point reduction under § 2D1.1(b)(6).

But Basey never argued to the district court that she was entitled to a reduction under § 2D1.1(b)(6). Her only objection to the PSR concerned its failure to recommend that she receive a reduction under § 3B1.2(b). We therefore limit our inquiry to whether the district court committed plain error in failing to reduce Basey's offense level under § 2D1.1(b)(6). *United States v. Koeberlein,* 161 F.3d 946, 949 (6th Cir.1998) ("Where, as here, a criminal defendant has failed to object below, he or she must demonstrate that the error was plain as defined by Fed.R.Crim.P. 52(b) before we may exercise our discretion to correct the error.") (footnote omitted).

The first step in a plain error analysis requires the court to determine "whether an error occurred in the district court." *United States v. Vincent,* 20 F.3d 229, 234 (6th Cir.1994). If no error occurred, the "inquiry is at an end." *Id.* In the present case, then, we must initially decide whether Basey was entitled to a two-point reduction under § 2D1.1(b)(6).

The parties agree that Basey's eligibility for a reduction under § 2D1.1(b)(6) turns on whether she complied with § 3553(f)(5). This provision requires a defendant, among other things, to disclose to the government any information in her possession that concerns her criminal activity. According to the government, Basey did not comply with this requirement when she refused to name the individuals who supplied the crack cocaine purchased by Jackson. Basey, however, maintains that she did not have to identify the crack cocaine suppliers in order to satisfy § 3553(f)(5) because the government had already discovered the suppliers' identities prior to her sentencing hearing.

The language of § 3553(f)(5) does not support Basey's contention. This provision requires the disclosure of "all information and evidence" regarding the criminal activity at issue. 18 U.S.C. § 3553(f)(5). Nothing in the statutory language indicates that this "blanket disclosure requirement" is limited by the needs of the government in a particular case. *United States v. Maduka,* 104 F.3d 891, 894–95 (6th Cir.1997) (holding that a defendant convicted of distributing heroin failed to satisfy § 3553(f)(5) when he refused to provide complete information regarding the immediate chain of distribution). Indeed, this court rejected such a limitation in *United States v. Adu,* 82 F.3d 119 (6th Cir.1996). The defendant in *Adu* claimed that, although he had withheld certain information regarding his criminal activity, he had complied with § 3553(f)(5) because he had given the government "all they asked." *Id.* at 124 (internal quotation marks omitted). This court held other-

wise, explaining that § 3553(f)(5) requires "an affirmative act by the defendant truthfully disclosing all the information he possesses that concerns his offense or related offenses." *Id.*

Accordingly, Basey had to identify her crack cocaine suppliers in order to satisfy § 3553(f)(5). She declined to do so. We therefore conclude that the district court did not commit any error, much less plain error, in failing to reduce Basey's offense level pursuant to § 2D1.1(b)(6).

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.