**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**D'Shawn Dwayne SHINHOLSTER,**
**Defendant–Appellant.**

**No. 01–4075.**

United States Court of Appeals,
Sixth Circuit.

May 13, 2003.

Before MOORE and GIBBONS, Circuit Judges; and COHN, District Judge.*

**OPINION**

GIBBONS, Circuit Judge.

A jury convicted defendant-appellant D'Shawn Dwayne Shinholster of armed bank robbery in violation of 18 U.S.C. §§ 2113(a), (d). The district court sentenced him to eighty months incarceration. Shinholster appeals his conviction and sentence. For the following reasons, we affirm.

**I.**

On February 14, 2001, two masked men robbed the First Merit Bank of Akron, Ohio. One of the men brandished a firearm during the robbery. A bank customer, Kathryn Graf, witnessed the men flee the bank in a car driven by a third man. Graf gave a description of the vehicle and its license plate number to the police, who stopped the vehicle about one-half hour after the robbery. Shinholster was the driver of the vehicle, and Leonard Harris and Blade Sherman were the two passengers. The police found a .38 caliber revolver in Harris's waistband and two black ski masks, black gloves, and two walkie-talkie radios in the vehicle. The robbers had abandoned the stolen money when dye packs exploded in the bags containing the money.

A grand jury indicted Shinholster and Harris on March 6, 2001. Both were charged with one count of aiding and abetting each other to commit armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d) and one count of using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Sherman, who agreed to plead guilty and testify against the others, was charged separately in a one count information. The district court scheduled a trial for Shinholster and Harris for May 14, 2001. Prior to trial, however, Harris reached a plea agreement with the government and agreed to testify against Shinholster. Shinholster's trial was continued until June 18, 2001.

At Shinholster's trial, the government called Graf as the first witness. She testified that she saw the robbery, chased the two robbers out of the bank, and wrote down the license plate number of the getaway car, which a third man was driving. Officer Thomas Woodill, one of the police officers who stopped the vehicle identified by Graf, testified that Shinholster was driving and that Harris and Sherman were passengers. Harris testified that the planning for the robbery occurred at Shinhol-

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

930

ster's house, where a fourth man, Billy Shinholster, gave each of the other three men assignments. Billy Shinholster assigned Harris to carry the gun, Sherman to collect the money, and D'Shawn Shinholster ("Shinholster") to drive the getaway car. During the bank robbery, Billy Shinholster stood across the street from the bank and directed the others with a walkie-talkie. Billy Shinholster did not ride in the getaway car. Sherman's testimony regarding the planning and execution of the bank robbery was consistent with Harris's account.

On June 21, 2001, the jury found Shinholster guilty of count one, armed bank robbery, but not guilty of count two, using and carrying a firearm during and in relation to a crime of violence. After the verdict, the government approached Shinholster about testifying against Billy Shinholster. Shinholster signed a proffer agreement and made a proffer statement on July 24, 2001, but the government chose not to use his testimony. Before sentencing, Shinholster moved for a downward departure from the sentencing guidelines based on his substantial assistance to the government. The government opposed this motion, and the district court denied the motion. The district court sentenced Shinholster to eighty months incarceration.

## II.

Shinholster raises five issues on appeal. He claims that (a) his statutory right to a speedy trial was violated, (b) his Fifth Amendment right to remain silent was violated by an FBI agent who during trial testimony referenced Shinholster's refusal to make a post-arrest statement, (c) the evidence was insufficient to support his conviction, (d) the district court erred by refusing to enforce the government's obligation to file a motion for a downward

departure for substantial assistance, and (e) the district court improperly enhanced his sentence pursuant to U.S.S.G. § 2B3.1(b)(2)(C) for possessing or brandishing a firearm.

### A. Shinholster's Right to a Speedy Trial

Pursuant to 18 U.S.C. § 3161(c)(1), the trial of a criminal defendant shall commence within seventy days from the later of the filing date of the indictment or the date the defendant first appears in court. Shinholster contends that the time started running on the date he was indicted, March 6, 2001. According to Shinholster, because his trial did not commence within seventy days from March 6, 2001, his speedy trial right was violated.

Shinholster's argument fails to account for days that are excluded from the calculation of time within which the trial must commence pursuant to § 3161. Between March 6, 2001, and the date the trial began, June 18, 2001, 103 days elapsed. Because more than thirty-three of these days are excluded under § 3161, Shinholster's right to a speedy trial was not violated.

Although it is the better practice to do so, a district court is generally not required to enter orders documenting time that is excluded under the Speedy Trial Act. We therefore review the record ourselves to determine the amount of time that is excluded. *See United States v. Jenkins*, 92 F.3d 430, 439 (6th Cir.1996) (rejecting the district court's determination of excluded time but reviewing the record to find a sufficient amount of excluded time pursuant to its own calculation).

Pursuant to § 3161(h)(1)(F), delay resulting from "any pretrial motion" shall be excluded in computing the time within which a criminal trial must commence. We do not distinguish among pretrial mo-

tions because "there is no authority for excluding some pretrial motions on the basis that they do not require a significant amount of thought or attention by the court." *Jenkins*, 92 F.3d at 440 (excluding thirty days based on a pretrial motion to seal a copy of a letter). Moreover, § 3161(h)(1)(F) does not require that the length of the delay resulting from a pretrial motion be reasonable. *Henderson v. United States*, 476 U.S. 321, 326–27, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986).

For a pretrial motion that requires a hearing, the entire time from the filing of the motion through the date of the hearing is excluded. *United States v. Robertson*, 260 F.3d 500, 504 (6th Cir.2001). If the pretrial motion does not require a hearing, then the time from the filing of the motion through the date that the district court receives all the information necessary to decide the motion is excluded. *Id.* Once the district court has all the information necessary to decide a pretrial motion, including argument heard at any hearing, then, pursuant to § 3161(h)(1)(J), a maximum of thirty days is excluded while the district court has the motion under advisement. *Id.*

■ On April 25, 2001, Shinholster filed a pretrial motion for review of his detention order. At the district court's request, the government responded to this motion on May 14, 2001, which is the date that the district court had all the information necessary to decide the motion. The time from April 25 through May 14 (twenty days) is excluded pursuant to § 3161(h)(1)(F). *See United States v. Salgado*, 250 F.3d 438, 454 n. 2 (6th Cir.2001) (finding that a pretrial motion for revocation of a detention order results in excluded time). The district court denied the motion on June 13, 2001. Pursuant to § 3161(h)(1)(J), the thirty days that this motion was under advisement by the district court are excluded. Based on these two exclusions alone, which total fifty days, it is clear that Shinholster's speedy trial right was not violated.[1]

**B. Shinholster's Fifth Amendment Right to Remain Silent**

FBI agent Alan Grimes investigated the bank robbery at issue in this case. During the government's direct examination of Grimes at trial, the following exchange occurred:

Q. Did you interview any of the suspects down there [at the police station]?

A. Yes, I did.

Q. Who was that?

A. I interviewed Blade Sherman. I attempted to interview D'Shawn Shinholster and Leonard Harris, but they refused to provide an interview.

Q. Did you in fact interview Blade Sherman?

A. Yes.

1. In addition, our review of the record reveals many other days that are excluded. For example, on April 9, 2001, Shinholster filed a pretrial motion requesting additional time to file motions. On April 13, 2001, the district court granted this motion. The time from April 9 through April 13 is excluded. *See United States v. Bruce*, Nos. 95–6046 to 95–6049, 1996 WL 640468, at *2 (6th Cir. Nov. 5, 1996) (excluding forty-one days for the resolution of a motion to extend the time for filing pretrial motions). While excluding large amounts of time for pretrial motions such as a motion to review a detention order and a motion for more time to file motions could undermine the purpose of the Speedy Trial Act, Congress was aware of this potential abuse and consciously chose not to address it by statute. *Henderson*, 476 U.S. at 327–28 (finding that Congress intended that such abuse be precluded by district and circuit court rules relating to speedy dispositions of pretrial motions).

Although no objection was made at trial, on appeal Shinholster asserts that his conviction should be reversed on the ground that this exchange violated his Fifth Amendment right to remain silent after his arrest.

Because no objection was made at trial, we review for plain error. *United States v. Vincent,* 20 F.3d 229, 234 (6th Cir.1994) (citing Fed.R.Crim.P. 52(b)). Under a plain error standard of review, the court makes four distinct inquiries. *Id.* First, the court considers whether an error occurred in the district court. *Id.* If an error occurred, the court considers whether the error was "plain." *Id.* If a plain error occurred, the court considers whether it "affects substantial rights." *Id.* If the plain error affects substantial rights, the court nevertheless affirms unless "the plain error affecting substantial rights seriously affected the fairness, integrity, or public reputation of the proceedings." *Id.*

▮ The Supreme Court has held that the prosecution cannot "use for impeachment purposes" a criminal defendant's post-arrest silence. *Greer v. Miller,* 483 U.S. 756, 763, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (quoting *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)). In this case, the prosecution did not attempt to use Shinholster's post-arrest silence to impeach Shinholster or to imply that Shinholster had a "consciousness of guilt." *United States v. Whitney,* 734 F.2d 1129, 1137 (6th Cir.1984) (forbidding a "prosecution's emphasis on the defendant's post-arrest silence in an effort to imply consciousness of guilt") *overruled on other grounds, see United States v. Robinson,* 887 F.2d 651, 653 n. 1 (6th Cir.1989). After responding to the prosecutor's proper question about the identity of the person he interviewed, agent Grimes volunteered, without further commentary, that Shinholster refused an interview. Defense counsel did not object, and the prosecutor immediately refocused the witness on the responsive part of his answer. The prosecutor did not solicit this comment and did not make any reference to it during closing argument or otherwise during the trial. The district court did not commit a plain error with regard to agent Grimes's single, unsolicited comment, and this comment did not seriously affect the fairness, integrity, or public reputation of the proceedings. Therefore, we cannot reverse Shinholster's conviction on this ground.

## C. Sufficiency of the Evidence

Shinholster contends that the government presented insufficient evidence to prove beyond a reasonable doubt that he aided and abetted in the commission of armed bank robbery. Shinholster does not dispute that the armed bank robbery occurred; instead, he contends that the government failed to prove that he had any role in it. In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the government and will affirm the jury's verdict unless no rational trier of fact could have found beyond a reasonable doubt that the defendant committed the offense charged. *United States v. Morrow,* 977 F.2d 222, 230 (6th Cir.1992).

▮ The evidence presented at trial against Shinholster was more than sufficient to support his conviction. Graf, who witnessed the armed bank robbers flee, testified that she wrote down the license plate number of the getaway car. Shinholster was driving this car when it was stopped by police about one-half hour after the robbery. Among the items the police found in the car were black ski masks, walkie-talkies, and a firearm. The two passengers in the car, Harris and Sherman, both admitted their involvement in the crime and testified that Shinholster

participated in the planning and execution of the armed bank robbery. Based on this evidence alone, a rational trier of fact could have found beyond a reasonable doubt that Shinholster aided and abetted in the commission of armed bank robbery.

### D. Shinholster's Entitlement to a Downward Departure

After Shinholster was convicted, the government approached him about testifying against Billy Shinholster. Shinholster alleges that in return for his agreement to cooperate, the government promised to recommend that his sentence be reduced on the basis of his substantial assistance. While he admits that there is no writing evidencing the government's promise, Shinholster contends that he and the government entered into a binding oral agreement. Shinholster argues that he fulfilled his obligations under the oral agreement by making a proffer statement and showing the government the route he took in the getaway car after the robbery.

The government states that it never promised to recommend that Shinholster's sentence be reduced on the basis of his substantial assistance. According to the government, the prosecutor offered to hear Shinholster's proffer and then decide whether the government wanted to offer Shinholster something in return for his testimony against Billy Shinholster. The government's description of the arrangement it had with Shinholster is corroborated by the written proffer agreement that both parties signed. After hearing Shinholster's proffer, the government chose not to use his testimony, and, therefore, the government did not recommend to the district court that Shinholster's sentence be reduced on the basis of substantial assistance.

■ The district court found as a factual matter that the government had not made an oral promise as alleged by Shinholster.

The district court instead found that the government had merely agreed to consider Shinholster's proffer and then decide whether to offer Shinholster something in exchange for his testimony. Because the district court's findings of fact are not clearly erroneous, we affirm the district court's conclusion that the government had no obligation to file a motion for a downward departure based on substantial assistance. *United States v. Hayes*, 135 F.3d 435, 437 (6th Cir.1998) (reviewing for clear error a district court's findings of fact in connection with sentencing).

### E. Shinholster's Sentence Enhancement

Finally, Shinholster challenges the sentencing enhancement he received under U.S.S.G. § 2B3.1(b)(2)(C) for participating in a jointly undertaken criminal activity during which a firearm was foreseeably possessed or brandished. Shinholster contends that because the jury acquitted him of using or carrying a firearm in violation of 18 U.S.C. § 924(c), the district court was precluded from enhancing his sentence pursuant to U.S.S.G. § 2B3.1(b)(2)(C).

■ An acquittal under 18 U.S.C. § 924(c) does not preclude a sentencing enhancement under U.S.S.G. § 2B3.1(b)(2)(C) because the government's burden of proof is significantly lighter at sentencing than at trial. *United States v. McCall*, 85 F.3d 1193, 1198 (6th Cir.1996). For purposes of U.S.S.G. § 2B3.1(b)(2)(C), the district court need only find by a preponderance of the evidence that the defendant participated in a jointly undertaken criminal activity during which a firearm was foreseeably possessed or brandished. *Id.;* U.S.S.G. § 1B1.3(a)(1)(B) (providing that for sentencing purposes a defendant is responsible for all reasonably foreseeable acts of others in furtherance of a jointly undertaken criminal activity).

Here, the district court relied on Harris's and Sherman's testimony that Shinholster was present when the four men, including Shinholster, agreed and planned to rob the bank using a firearm. The district court's determination that Shinholster knew when he agreed to participate in the bank robbery that a firearm would be used was not clearly erroneous, and, therefore, we affirm the district court's decision to enhance his sentence pursuant to U.S.S.G. § 2B3.1(b)(2)(C). *See United States v. Cowan,* 196 F.3d 646, 650 (6th Cir.1999) (reviewing for clear error a district court's factual findings for purposes of enhancing a sentence pursuant to U.S.S.G. § 2B3.1(b)(2)(C)).

### III.

For all the foregoing reasons, we affirm the judgment of the district court in all respects.